UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| MICHAEL MONK | : | DOCKET NO. 10-CV-1137 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| PERFORMANCE CONTRACTORS, INC. | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM ORDER

For the reasons stated herein, plaintiff's motion to remand [doc. 6] is DENIED.

### *Facts and Summary of Arguments*

This suit was originally brought on June 3, 2010, in the Fourteenth Judicial District Court, Calcasieu Parish, State of Louisiana. Doc. 1, att. 2. In the original complaint, plaintiff Michael Monk sought relief against defendant Performance Contractors, Inc. (Performance) for injuries allegedly sustained when plaintiff was "rear-ended in Calcasieu Parish on Interstate 10." *Id.* at p. 2. The vehicle that plaintiff was driving when the accident occurred was owned by Performance and plaintiff was on his way home from work. *Id.*; doc. 6, att. 1, p. 1.

In his complaint, plaintiff alleges two theories of contractual liability. First, plaintiff alleges that while he was being treated in the hospital emergency room, two Performance employees – Jeremy Cooper (Performance's Operation Manager) and Patrick Vincent (Performance's Superintendant) – "each agreed, on behalf of Performance," that Performance would "pay all of plaintiff's medical bills" that he would incur as a result of the accident. Doc. 1, att. 2, p. 2. According to plaintiff, when he began submitting his medical bills to Performance, however, Performance breached the contract by refusing to pay. *Id.* at 3. Second, plaintiff

alleges that the employment contract between him and Performance included a clause stating that Performance would provide health insurance to its employees. *Id.* According to plaintiff's complaint, Performance failed to fulfill this obligation as well. *Id.*

Performance filed a notice of removal with this court on July 13, 2010, pursuant to 28 U.S.C. §§ 1440 and 1446. Doc. 1. In its removal notice, Performance asserted federal jurisdiction pursuant to 28 U.S.C. § 1331 *et seq.*, "inasmuch as [p]lanitiff asserts claims which, if true, are preempted completely by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*" *Id.* at 1-2. Specifically, Performance asserts that, under both theories of breach, because plaintiff is seeking damages for medical services provided while he assumed that he was covered by an employee insurance plan, plaintiff's claims "relate to" an employee benefit plan within the meaning of ERISA and are thereby completely preempted by the federal statute. *Id.* at 2.

Plaintiff filed a motion to remand, the motion now before the court [doc. 6], on August 12, 2010. In this motion, plaintiff argues that his claims "do not seek benefits from any ERISA plan and do not involve, in any way, application or interpretation of any federal law." *Id.* at 2. In the alternative, plaintiff requests leave of court to strike from its original complaint any allegations that could be construed to state a claim for employment benefits under an ERISA plan. *Id.*

## *Law and Analysis*

Defendants are free to remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction. . . ." 28 U.S.C. § 1441(a). The propriety of removal depends on whether the case originally could have been filed in federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386,

392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant[;] absent diversity of citizenship, federal-question jurisdiction is required."). The burden of proof for establishing removal jurisdiction is placed on the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). "If the right to remove is doubtful, the case should be remanded." *Case v. ANPAC Louisiana Ins. Co.*, 466 F.Supp.2d 781, 784 (E.D. La. 2006); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) (removal is to be construed narrowly and in favor of remand to state court); *Perkins v. State of Miss.*, 455 F.2d 7 (5th Cir. 1972) (same). Here, Performance, the removing party, bears the burden of demonstrating the proprietary of removal. *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961).

A suit "aris[es] under" federal law within the meaning of § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27-28 (1983)). The decision to provide a federal forum for resolving significant federal issues embedded in state-law claims rests on policy considerations that have prevented the Supreme Court "from stating a single, precise, all-embracing test." *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (internal quotation omitted). The Court has, however, provided some guidance:

> [T]he federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. . . . [T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

responsibilities.

*Id.* at 314; *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 19 (1987) ("ERISA preemption analysis must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.").

### I.   ERISA Claim

Here, a state claim for breach of contract is the core of plaintiff's complaint. Thus, the question to be decided is whether any potential ERISA claims involved "necessarily raise" an "actually disputed and substantial" stated federal issue, which would give this court jurisdiction "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod.*, 545 U.S. at 314.

Congress enacted ERISA as a comprehensive system to regulate employee benefit plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). ERISA contains a preemption clause which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that congress intended the ERISA preemption clause to be interpreted in the broadest possible manner. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). ERISA preemption applies not only to state laws but to all forms of state action dealing with the subject matters covered by the statute. 29 U.S.C. § 1144(c)(1). Accordingly, when a suit alleges a state common-law or statutory cause of action relating to an ERISA plan, the suit may be preempted in favor of federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-67 (1987).

Under the test articulated by the Fifth Circuit,

> ERISA preempts a state law claim if a two-prong test is satisfied: (1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Mayeaux v. Louisiana Health Service and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (citing *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) and *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995)).

Here, the second prong is easily met. On the face of the complaint, plaintiffs' state law breach of contract claims against Performance arise from Performance's alleged failure to provide plaintiff with insurance and other medical coverage as promised. Since the alleged contracts are between an employer and an employee – the traditional ERISA plan provider and the traditional plan beneficiary – the second prong is easily fulfilled. *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008).

As to the first prong, the court must ascertain whether a plan "(1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'" – that is, whether there exists "the right to receive benefits under the terms of an ERISA plan." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993); *Mayeaux*, 376 F.3d at 432.

### a. *Existence of an ERISA Plan*

The court must first decide whether an "ERISA plan" existed at all. *See Capro v. Securitas Sec. Services USA, Inc.*, No. 08-5227, 2009 WL 3231770, *3 (E.D. La. Oct. 2, 2009) ("[I]t is clear that if an ERISA plan *never* existed preemption would not be possible."). ERISA defines an "ERISA plan" as

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). "To qualify as a plan, fund, or program, ERISA does not necessarily

require a formal written arrangement." *Cantrell v. Currey*, 407 F.Supp.2d 1280, 1286 (M.D. Ala. 2005) (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir. 1982)); *see also Whitfield v. Torch Oper. Co.*, 935 F.Supp. 822, 828 (E.D. La. 1996) ("A formal document designated as 'the Plan' is not required to establish that an ERISA plan exists; otherwise employees could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated."). Whether an ERISA plan exists is a question of fact whereby the court must determine whether "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373; *see also Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976-77 (5th Cir. 1991) (recognizing the Fifth Circuit's adoption of the *Donovan* test and noting that the inquiry is one of fact).

     Turning first to the intended benefits, the alleged plans involve the payment of medical bills. The alleged oral contract involved the benefit of payment "of plaintiff's medical bills that he ha[d] incurred and will incur as a result of [the] April 28, 2010 accident." Doc. 1, att. 2, p. 2. The alleged employment contract plan involves the payment of the same medical bills, pursuant to coverage provided by Performance's "Health Benefit Plan" (the Plan). *See* doc. 8, att. 2. Overall, the allegations clearly define intended benefits, easily ascertainable by a reasonable person.

     Next, the *Donovan* test requires an examination of whether a reasonable employee could discern the class of intended beneficiaries. Here, the oral contract plan explicitly named the plaintiff as the beneficiary. The Plan, on the other hand, does not explicitly state which employees would be eligible for the benefits provided therein. However, it is not beyond the court's authority to ascertain this information from the record. *Hollingshead v. Burford Equip.*

*Co.*, 747 F.Supp. 1421, 1428 (M.D. Ala. 1990).  Indeed, it is alleged that Performance's employees generally received entitlements under the Plan.  *See* doc. 8, att. 1 (Deposition of Scott Favre, stating that "[a]ll full time employees are eligible to participate in the [P]lan").  Considering the consistent approach taken by Performance to provide employees with medical insurance, the court finds a reasonable employee could determine the class of intended recipients.  Defendants do not challenge the notion that all other eligible employees were provided benefits under the Plan.

The third element in this analysis is equally easily met.  It is clear that Performance would be the source of medical coverage under the oral contract plan as alleged.  As to the Plan, the text itself makes it quite clear that it is "**ESTABLISHED AND FUNDED BY**" Performance.  Doc. 8, att. 2, p. 2.  In fact, because the announcement of Performance as the Plan financer is in bold, capital letters on the first page of the Plan, a reasonable person would be challenged to envision any alternative provider of funds.  *See id.*

Finally, a reasonable employee must be able to determine the procedures for applying for and receiving benefits.  This question is not resolved by the express terms of the oral contract plan as alleged.  Still, such a finding does not necessitate a failure of the fourth element of the test; instead, the court must focus its analysis on the plaintiff's "knowledge, whether actual or imputed," about Performance's claims process.  *Kirkland v. SSL Americas, Inc.*, 263 F.Supp.2d 1326 (M.D. Ala. 2003).  Many courts have found that a reasonable employee could ascertain the procedure for receipt of benefits where informal procedures are in place or where the experiences of other employees made the process apparent. *See e. g. Deibler v. United Food & Comm'l Workers' Local Union 23*, 973 F.2d 206, 210 (3d Cir. 1992) (citing *Donovan*, 688 F.2d at 1373) ("It is true that . . . the procedure for receiving benefits were never made explicit, but it is enough

if these can be ascertained from the 'surrounding circumstances.'"); *Whitfield*, 935 F.Supp. at 828 (finding the fourth prong of *Donovan* satisfied when the "procedures for receiving benefits are also gleaned from the prior terminations"); *Kirkland*, 263 F.Supp.2d at 1339-40 (finding compliance with *Donovan* in the absence of formal procedures); *Petersen v. E.F. Johnson Co.*, No. 02-333, 2002 WL 1975907, at *2 (D. Minn. Aug. 23, 2002) ("[W]hile the Program does not explicitly contain procedures for receiving benefits, a reasonable person could ascertain the informal procedures to follow.").

Considering the surrounding circumstances a reasonable employee could have discerned how to receive benefits under both the oral contract plan and the Plan. As to the oral contract plan, plaintiff discerned this when he submitted his medical bills to Performance and was denied. *See* doc. 1, att. 2, p. 3; *see also Whitfield*, 935 F.Supp. at 828 (finding an ERISA plan where "the procedure for [the] receipt [of benefits] was, at most, no more than a simple request"). The Plan, on the other hand, has explicit provisions pertaining to applying for and receiving benefits. *See* doc. 8, att. 2.

As both the oral contract plan the Plan satisfied all the requirements of *Donovan*, the Court determines that both constitute a "plan, fund, or program" within the meaning of § 1002(1). Thus, an "ERISA plan" existed.

### b. *The Department of Labor Regulations*

"[T]he Department of Labor, pursuant to authority granted to it by Congress, has promulgated regulations providing that certain plans are excluded from ERISA's coverage." *Hansen*, 940 F.2d at 977, 976. If the plans in question here meet the criteria for ERISA exclusion set forth in the Department of Labor regulations, "then ERISA does not cover that plan, and the inquiry is ended." *Hansen*, 940 F.2d at 976 (citing *Kidder v. H & B Marine, Inc.*,

932 F.2d 347, 351 (5th Cir. 1991) and *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir. 1991)).

The Department of Labor regulations provide that the term "employee welfare benefit plan":

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
> (1)   No contributions are made by an employer or employee organization;
> (2)   Participation the program is completely voluntary for employees or members;
> (3)   The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4)   The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3-1(j). "A program that meets these standards will be deemed not to have been 'established or maintained' by the employer, and therefore would fall outside of ERISA's scope." *Rubin v. Guardian Life Ins. Co. of America*, 174 F.Supp.2d 1111, 1117 (D. Or. 2001) (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1113 (1st Cir. 1995)); *see also Hansen*, 940 F.2d at 977 (citing *Kidder*, 932 F.2d at 351; *Gahn*, 926 F.2d at 1452; *Memorial Hospital System v. Northbrook Live Ins. Co.*, 904 F.2d 236, 241, n.6 (5th Cir. 1990)) (noting that if an insurance plan meets each of these criteria it is excluded from ERISA's coverage). The two plans alleged will be analyzed separately under this test.

      i.   The Oral Contract Plan

The Department of Labor regulations do not apply to the plan that allegedly arose pursuant to the oral contract because it is not a "group-type insurance program offered by an insurer." Rather, it was a benefit plan offered to an individual directly by the employer. Since a "finding that a plan is a group or group-type insurance program is a predicate to application of"

the Department of Labor's regulations, the analysis ends before it begins. *U.S. v. Blood*, 806 F.2d 1218, 1222 (4th Cir. 1986).

In other words, the analysis is not necessary because the oral contract plan would obviously be "'established or maintained' by the employer." *Rubin*, 174 F.Supp.2d at 1117.

### ii. The Employment Contract Plan

The Plan that arose pursuant to the employment contract was clearly funded by the employer and the employees. Again, as evidenced by the text of the Plan: "**THE BENIFITS AND COVERAGE DESCRIBED HEREIN ARE PROVIDED THROUGH A PLAN ESTABLISHED AND FUNDED BY THE EMPLOYER.**" Doc. 8, att. 2, p. 2.

Because the application of the regulations "fails at the first step," the court "need not consider the others." *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 454 (7th Cir. 2005).

### c. *The Right to Receive Benefits Under the Terms of an ERISA Plan*

Having determined that ERISA plans existed and do not fall within the safe harbor provision of the Department of Labor regulations, the only question left to resolve is whether the claim at hand involves "the right to receive benefits under the terms of" those ERISA claims. *Mayeaux*, 376 F.3d at 432; *see also MD Physicians & Associates, Inc. v. State Bd. of Ins.*, 957 F.2d 178, 183 (5th Cir. 1992) (quoting *Hansen*, 940 F.2d at 977) ("Just because 'a plan' exists, however, does not necessarily mean that the plan is an ERISA plan.'"). As to contract claims, courts have held that "if the dispute arises from alleged misrepresentations about the extent of plan coverage or benefits, a court must 'determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan.'" *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. 05-4389, 2007 WL 320974, *7 (S.D. Tex. 2007) (quoting *Transitional Hosps. Corp. v. Blue Cross & Blue*

*Shield of Tex., Inc.*, 164 F.3d 952, 955 (5th Cir. 1999)). Plaintiff argues that because this suit involves alleged misrepresentations about the benefits of employment, not about the scope of Performance's employee insurance policy, ERISA does not preempt state law and there is therefore no federal jurisdiction. Doc. 9, p. 4.

Plaintiff's assertion runs counter to a string of Fifth Circuit cases holding that ERISA preemption may occur when a misrepresentation is "allegedly made by employers to employees regarding the benefits to which the employees were entitled." *Memorial Hospital*, 904 F.2d at 248, n.16; *see also Lee* v. *E.I. DuPont de Nemours and Co.*, 894 F.2d 755 (5th Cir. 1990); *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir. 1989) (citing *Metro. Life Ins. Co.*, 481 U.S. 58 (1987)) ("[C]ommon-law contract . . . claims based upon laws of general application . . . are preempted by ERISA."); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989).

In *Degan* the plaintiff alleged that he had accepted a separation pay settlement based upon false representations made by his employer. 869 F.2d 889. The plaintiff filed a suit for breach of contract against his employer in state court. *Id.* at 891. The suit was then removed to federal court, where the court found that it had jurisdiction pursuant to ERISA. *Id.* at 893. This, despite finding that the oral contract claim was not a cognizable suit under ERISA. *Id.* at 895. Describing the employer's misrepresentation as a "betrayal without remedy," the court concluded that the congressional policy in favor of "providing access to federal courts" via ERISA preemption required that the court retain the suit. *Id.* at 894-95.

A similar result was reached in *Lee*. 894 F.2d 755. In *Lee* a group of employees alleged that their employer misled them as to whether or not a certain early retirement plan would be offered in the near future. *Id.* at 756. Although such a plan was rumored, the employees retired early upon the assurances of company managers that no such plan was contemplated. *Id.*

Approximately one year later the employer adopted an early retirement plan under which early retirees would be entitled to increased benefits. *Id.* Plaintiffs filed suit in state court, asserting a state law breach of oral contract claim. *Id.* Alleging diversity and federal question jurisdiction, plaintiffs' state law suit was removed to federal court by the employer. *Id.* at 756. The district court held that the state law claims were preempted by ERISA. *Id.* The suit was then appealed to the Fifth Circuit Court of Appeals solely to decide the preemption issue. *Id.* The Fifth Circuit found that "[a]ny remedy that exist[s] must come from within that exclusively federal scheme of [ERISA]," and affirmed the district court's decision. *Id.* at 758.

Likewise, in *Cefalu* an employee sought to recover benefits that were orally promised by his employer. 871 F.2d at 1291-92. When the employer later discovered that he was not in fact provided the promised benefits, the plaintiff filed a suit in state court for breach of an alleged oral contract. *Id.* The court held that ERISA preempted the state contract claim. *Id.* at 1295. More importantly, in making clear that there was complete ERISA preemption *despite the fact that the plaintiff was seeking recovery from his employer instead of the plan itself*, the *Cefalu* court specifically rejected the notion that the plaintiff herein asserts. *Id.* at 1292-93.

In *Deagan*, *Lee*, and *Cefalu* the Fifth Circuit Court of Appeals found that the claims involved the rights of the plan beneficiaries to recover benefits under the terms of the plan, even where the plaintiffs were seeking recovery from the employer instead of the plan. Because a similar situation exists here, the court finds likewise.

Because both prongs of the Fifth Circuit's test are met, the court finds that the suit is preempted by ERISA. The court therefore has jurisdiction to entertain the suit. *See Mayeaux* 376 F.3d at 432.

## II. Exceptions

Once it is decided that congress intended federal jurisdiction, district courts, "must entertain [the] suit." *Bell v. Hood*, 327 U.S. 678, 681-82 (1946). However, there are "two possible exceptions" to this rule. *Id.* The two exceptions occur "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682-83. Here, there is no indication that that the plaintiffs asserted an ERISA claim solely for the purpose of obtaining jurisdiction or that his claim is insubstantial or frivolous. Thus, the court must entertain the suit.

## III. Leave of Court

In the alternative, plaintiff asks the court to allow leave to amend the complaint and strike any jurisdiction-giving allegations under Rule 15, Fed. R. Civ. P. Doc. 6, att. 1, p. 6. To support its request, plaintiff points to *Sullivan v. Conway*, which declared that "if all the federal claims drop out before trial, even as a consequence of the plaintiff's own voluntary dismissal, the district judge normally will relinquish jurisdiction over the state-law claims." 157 F.3d 1092, 1095 (7th Cir. 1998); *see also* doc. 9, p. 5.

Performance, on the other hand, argues that if the plaintiff were granted leave to amend any jurisdiction-giving allegations, plaintiff would be "striking the entire [c]omplaint." Doc. 8, p. 5.

Pursuant to the above analysis, the court agrees with Performance. There are two allegations made here; both for breach of contract and both preempted by ERISA. Of course, plaintiff always has the option to dismiss both of these claims, and Performance would likely not object, but in doing so plaintiff would forfeit any chance at relief.

### *Conclusion*

In consideration of the above, this court finds that this suit was properly removed. Accordingly, plaintiff's motion to remand [doc. 6] is DENIED.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on December 6, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE